# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**COLETTE PARKER o/b/o X.W.,**

    Plaintiff**,**

**vs.**                                                     **Case No. 8:06-CV-1352-T-26EAJ**

**MICHAEL J. ASTRUE**[1]
**Commissioner of**
**Social Security,**

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying a claim for Supplemental Security Income ("SSI") on her child's behalf under the Act.[2]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1] On February 1, 2007, Michael J. Astrue became the Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The district judge has referred this matter to the undersigned for consideration and a report and recommendation. See Local Rules 6.01(b) and 6.01(c), M.D. Fla.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

In a child's SSI case, there is a three-step sequential process for determining whether the child is disabled. 20 C.F.R. § 416.924(a)-(d). The first step is determining whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If the child is not engaged in substantial gainful activity, then the second step is to determine whether the child's impairment is "severe." 20 C.F.R. § 416.924©). This step requires analysis of whether the impairment is more than just "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." Id. If it does not cause more than minimal functional limitations, then the impairment is not "severe" and the child is not disabled. Id. Finally, the third step requires

analysis of whether the impairment meets, medically equals, or functionally equals in severity a listed impairment in 20 C.F.R. Pt. 404, Subpart P, Appendix 1.  20 C.F.R. § 416.924(d).

If the child's impairment or combination of impairments does not meet or medically equal any listed impairment, the examiner determines whether the impairment functionally equals a listing by evaluating the child's six domains of functioning.  The six domains of functioning are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well being.  20 C.F.R. § 416.926a(b)(1).  If the child has extreme limitations in one of the broad areas of development or functioning, or marked limitations in two of such areas of development or functioning, a finding of functional equivalence will be made.  20 C.F.R. § 416.926a(a).

## I.

Plaintiff filed her application for SSI benefits on behalf of Claimant, a child under the age of 18, on November 27, 2002, alleging a disability onset date of June 3, 2002. (T 61-62)  Plaintiff alleges that Claimant is disabled due to asthma. (T 68)  Plaintiff's application was denied initially, upon reconsideration, and by the ALJ in a decision dated February 22, 2005.  (T 15-22)  Claimant was two years old at the time of the decision. (T 15, 61)  On June 12, 2005, the Appeals Council denied the Plaintiff's request for review.  (T 5-8)  Plaintiff then filed this action seeking judicial review of the Commissioner's final decision.  (Dkt. 1)

Following the administrative hearing, the ALJ found that Claimant's asthma was a severe impairment; however, the ALJ concluded that the limitations resulting from the effects of Claimant's impairment do not meet, medically equal, or functionally equal an impairment listed in the Listing

of Impairment 103.03 found in Appendix 1, Subpart P of Regulations No. 4. (T 22) Specifically, in determining whether Claimant's impairment met or equaled the listing for asthma, the ALJ found that Claimant: (1) did not have decreased forced expiratory volume in one second; (2) did not have asthma attacks in spite of prescribed treatment that require physician intervention occurring at least once every two months or six times a year; (3) did not have persistent low-grade wheezing between acute attacks; and (4) did not have a growth impairment. (T 17)

In determining whether Claimant's impairment functionally equaled the listing, the ALJ found that Claimant did not have marked limitations in at least two domains or extreme limitations in any domain for older infants and toddlers (age one to attainment of age three). (T 22) After considering the medical evidence and hearing testimony, the ALJ found that there was no indication in the record that Claimant had any limitations in the six domains. (T 18-22)

The medical evidence has been discussed in the ALJ's opinion and will not be repeated here except where as necessary to address the issues presented.

**II**

**A.**   Plaintiff contends that the ALJ's conclusory determination that Claimant's asthma does not meet or equal the requirements of Listing 103.03 is not supported by the evidence or the Listing requirements.

Plaintiff first alleges that the ALJ erred in finding that Claimant did not have asthma attacks that occurred at least once every 2 months or at least six times a year as set forth in Listing 103.03(B). According to Plaintiff, in October 2002, Claimant was prescribed medication for his asthma. In October 2002, Plaintiff asserts that Claimant required inpatient hospitalization, and therefore this hospitalization should count as two attacks under the Listing. Plaintiff also asserts

4

between October 2002, through April 2004, Claimant was treated for numerous asthma exacerbation.[3] Moreover, Plaintiff contends that, because Claimant's doctor educated Plaintiff on how to treat Claimant's asthma exacerbations so she could reduce the necessity of emergency room treatments, the ALJ should have considered these home treatments in deciding whether Claimant meet the Listing. Second, Plaintiff argues that the ALJ erred by deciding that Claimant did not meet Listing 103.03( C)(2). Specifically, Plaintiff argues that the ALJ failed to consider Claimant's twenty or more treatments for asthma attacks, Claimant's absence of extended symptom-free periods and Plaintiff's testimony regarding Claimant's use of corticosteroids.

In response, the Commissioner contends that because Claimant was first diagnosed with asthma in October 2002, his October hospitalization may not be considered for purposes of meeting the requirements of Listing 103.03(B). Moreover, in the twelve month period after his diagnosis, the Commissioner states that Claimant was treated only four times for asthma attacks. The Commissioner argues that Claimant never experienced the frequency of asthma attacks required under the Listing. As to Listing 103.03( C)(2), the Commissioner contends that Claimant never exhibited persistent low-grade wheezing or an absence of extended symptom-free periods.

When a claimant contends that he has an impairment meeting the listed impairments, he must present specific medical findings that meet the various tests listed under the applicable impairment, or if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has

---

[3] Asthma exacerbation is another term for asthma attack. Davis v. Callahan, No. 96 Civ. 9367(SAS), 1997 U.S. Dist. LEXIS 11256, at * 24 (S.D. N.Y. Aug. 4, 1997).

such an equivalency. Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986) (citing 20 C.F.R. §§ 404.1525, 404.1526).

### 1. Whether Claimant's Impairment Meets or Equals Listing 103.03(B)

To meet the Listing 103.03(B), a child must have asthma with "attacks"

> in spite of prescribed treatment and recurring physician intervention, occurring at least every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 3.00( C), 103.03(B). Asthma "attacks" are defined as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Id.; Johnson v. Barnhart, 148 Fed. Appx. 838, 842 (11th Cir. 2005).

According to Claimant's medical records, Claimant was first diagnosed with asthma as a result of a hospital admission on October 8, 2002. (T 107) Similarly, Plaintiff testified at the hearing that Claimant was first diagnosed with asthma in October 2002. (T 235) When Claimant was discharged from the hospital on October 11, 2002, he was prescribed the following medications to treat his asthma: Albuterol nebulizers, Prelone, Dallergy and Pulmicort. (T 107) Thus, in determining whether Claimant met the requirements of Listing 103.03(B), Claimant's October 8, 2002 hospitalization is not considered an attack because it did not occur "in spite of prescribed medications."

The record indicates that Claimant had five asthma attacks on the following dates: December 23, 2002, March 12, 2003, March 14, 2003, March 24, 2003 and September 22, 2003.[4] On December 23, 2002, Claimant's medical records show a visit to the doctor for diarrhea, a rash on his stomach, and an asthma attack, with a mild cough and wheezing. (T 132) On March 12, 2003, Claimant was treated in the emergency room for reactive airway disease and an apparent asthma attack. (T 163) The instructions upon his discharge indicate Claimant should continue breathing treatments every four hours. (T 165) Two days later on March 14, 2003, Claimant was treated at the doctor's office for an asthma attack, nasal discharge and wheezing. (T 195) On March 24, 2003 and September 22, 2003, Claimant was treated at his doctor's office for asthma attacks. (T 187, 193-1944)

Further, the medical records suggest that Claimant suffered a sixth asthma attack after Claimant's October 2002 diagnosis of asthma. In a January 15, 2003 letter from Claimant's treating physician, Stacy B. Pierson, M.D. ("Dr. Pierson") stated that Claimant had moderate to severe persistent asthma. (T 129) Dr. Pierson wrote that Plaintiff had his "first episode of asthma at three months of age which, after three outpatient visits, did not resolve until he was put into the hospital for three days in October 2002." (T 129) Dr. Pierson noted that, since being hospitalized in October 2002, Claimant had two more asthma attacks. (Id.) Indeed, on October 21, 2002, and December 23, 2003, Claimant's records show doctor's visits for asthma exacerbations. (T 134) However, because of the illegible handwriting in the notes related to the October 21, 2002 visit, the undersigned cannot determine if Claimant was treated for an asthma attack on that date. (T 134)

---

[4] The Commissioner contends that Claimant was treated for four asthma attacks following his diagnosis of asthma: December 23, 2002, March 14, 2003, March 24, 2003 and September 2, 2003. (Dkt. 15 at 7)

7

Under these circumstances, the Commissioner may recontact the treating doctor for additional information or clarification or order one or more consultative examinations. 20 C.F.R § 416.912(e). Therefore, because Claimant's medical records suggest he experienced six asthma attacks within a twelve month period, the ALJ should have developed the record fully to determine if Claimant meet Listing 103.03(B).

Additionally, the ALJ did not adequately develop the record to determine whether Claimant had any asthma attacks at home lasting at a day or more and whether Claimant received home inhalation treatments which could equal intensive treatments in a hospital or emergency room. 20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 3.00( C), 103.03(B)

Plaintiff testified at the hearing that the doctors advised her how to medicate her son in situations that ordinarily would require Claimant to visit the emergency room. (T 238) When her son has consistent wheezing, Plaintiff stated that the doctor advised her to give her son up to three Albuterol treatments in one hour, with 20 minutes lapsing between treatments. (T 236, 238.) After receiving instructions on home inhalation therapy from Claimant's doctors, Plaintiff testified she medicated her son numerous times. The medical records also indicate that Claimant received medications using a nebulizer and was taking Albuterol. (T 119, 130-132, 137, 183, 185, 187, 190, 192-195, 217)

The ALJ also failed to address whether Claimant's home inhalation treatments may have been equivalent to the intensive treatments he received at the emergency room or doctor's office.

For the reasons discussed, it cannot be determined based on the present record whether substantial evidence supports the Commissioner's determination that Claimant did not experience asthma attacks with adequate frequency as required by Listing 103.03(B). Accordingly, on remand,

8

the ALJ should specifically address the following issues: (1) whether Claimant had the requisite number of asthma attacks under Listing 103.03(B); and (2) whether Claimant's asthma attacks that occurred at home lasted a day or more and required prolonged intensive treatments.

### 2. Whether Claimant's Impairment Meets or Equals Listing 103.03( C)

Plaintiff also claims the ALJ misinterpreted Listing 103.03( C) by failing to consider all the substantial evidence of Plaintiff's testimony and the medical records.[5] Specifically, Plaintiff states that although the ALJ found that Claimant did not have persistent low-grade wheezing between attacks, the ALJ ignored the evidence of Claimant's absence of symptom-free periods and use of bronchodilators and corticosteroids. (Dkt. 14 at 6-7; T 17)

This court agrees that the ALJ applied the wrong legal standard in determining if Claimant's impairment meet Listing 103.03( C). Importantly, if there is no evidence of persistent low-grade wheezing between acute attacks, a claimant meets the asthma listing if there is "an absence of extended symptom free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with short courses of corticosteroids that average more than five days per month for

---

[5] To meet or equal Listing 103.03( C), a claimant must demonstrate:

> Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the two following:
>
> 1. Persistent prolonged expiration with radiographic or other appropriate imagining techniques evidence of pulmonary hyperfinflation or peribronical disease; 2. Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period,

20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 3.00( C), 103.03( C).

at least three months during a twelve month period." Parker v. Barnhart, 2003 U.S. Dist. LEXIS 24741 *20 (July 3, 2003), aff'd, 2003 U.S. Dist. LEXIS 24743 (S.D. Fla. July 21, 2003); see Listing 103.03(C)(2) of 20 C.F.R. Part 404, Appendix 1 to Subpart P.

In addition to Claimant's asthma attacks in 2002 and 2003 discussed above, Claimant's medical records indicate visits to the doctor's office or emergency room on at least thirteen occasions between December 2002 and May 2004 for sinusitis, upper respiratory infections, runny nose, coughing, wheezing, congestion, fever, and ear aches.[6] Likewise, Plaintiff testified at the hearing that, despite the medications prescribed for Claimant, Claimant experienced breathing problems, including shortness of breath, wheezing and consistent coughing during the day and night. (T 238-240)[7] The clinical manifestations of asthma are episodes of coughing, shortness of breath, and wheezing. 14 Roscoe N. Gray and Louise J. Gordy, Attorney's Textbook of Medicine ¶ 200.00 (3d ed. 2002). These symptoms may occur together; however, some patients will have only a cough or shortness of breath. Id.; see also Parker v. Barnhart, 2003 U.S. Dist. LEXIS 24741 *20 (coughing

---

[6] On December 27, 2002, January 16, 2003, April 21, 2003, July 7, 2003, September 2, 2003, October 20, 2003, January 22, 2004, April 6, 2004 and May 1, 2004, Claimant was treated for sinusitis. (T130-131, 182-84, 186, 188,190, 192) During these visits, the symptoms were often runny nose, nasal drainage, congestion and coughing. (Id.) On February 14, 2003, Claimant visited the doctor because of complaints of a runny nose and fever. (T 197) These records indicate that Claimant was wheezing and had an upper respiratory infection. (Id.) In June 2003, Claimant visited the doctor's office for complaints of congestion, fever and runny nose. (T 191) On August 14, 2003, Claimant was admitted to the emergency room for a febrile seizure resulting from a high fever for two days. In addition, Claimant's medical records indicate he was suffering from congestion and an ear ache. (T 199-210) On December 1, 2003, Claimant was treated for an upper respiratory infection, with a cough and runny nose. (T 185)

[7] Of course, the ALJ is the ultimate judge of credibility as to testimony, but as discussed hereafter, the ALJ failed to make specific findings regarding the credibility of certain portions of Plaintiff's testimony which is material to the issues presented.

is a symptom of asthma). Moreover, to control Claimant's asthma symptoms, Dr. Pierson prescribed daily steroid therapy. (T 129)

There are also medical treatment records documenting Claimant's use of Albuterol, Pulmicort, DuoNeb, Orapred and Rhinocort.[8]  Although Claimant's medical records do not indicate how often Claimant took these medications, Dr. Pierson's letter of January 16, 2003 indicates Claimant was on daily steroid therapy. (T 129)  Further, during the hearing, Plaintiff testified that Claimant was taking Pulmicort at least once a day, but sometimes twice a day. (T 236, 239)  She also stated that Claimant was on DuoNeb "probably a minimum of three or four times a week" and that she gave Claimant Albuterol treatments when Claimant had consistent wheezing. (T 236, 238-239)  According to Plaintiff's testimony, Claimant uses a nebulizer to take the Pulmicort and DuoNeb. (T 239-240)

A full and fair hearing is required before determining whether a claimant is disabled.. Without additional fact-finding by the Commissioner at the administrative stage, this court cannot determine whether substantial evidence supports the ALJ's finding that Claimant's asthma

---

[8] From October 2002 to December 2002, Claimant's medical records indicate he was taking Albuterol and Pulmicort. (T 119, 131, 132, 178)  The medical records for January 16, 2003 reveal that Claimant was taking medications using a nebulizer. (T 130)  On February 14, 2003, Claimant visited the doctor because of complaints of a runny nose and fever. (T 197)  Because the handwriting is illegible, the undersigned cannot determine what course of treatment the doctor prescribed. (Id.)  During March and April 2003, Claimant was taking antibiotics, Albuterol, Pulmicort, Orapred and using a nebulizer. (T 192-196)  Because of the illegible handwriting, it difficult to determine if Claimant was prescribed a corticosteroid or antibiotic to treat his fever and upper respiratory infection in June 2003. (T 191)  On July 7, 2003, Claimant was using a nebulizer and prescribed an antibiotic or corticosteroid. (T 190)  From August 2003 to December 2003, Claimant was taking Pulmicort, DuoNeb, Albuterol and Rhinocort and using medications for a nebulizer. (T 185-188, 207)  From January 2004 to September 2004, Claimant's medical records indicate he was taking Pulmicort, DuoNeb, Flovent, Orapred, Rhinocort and using nebulizer medications. (T 182-184, 217-226)

impairment does not meet or equal Listing 103.03( C). Therefore, on remand, the ALJ should determine whether Claimant's daytime and nocturnal use of sympathomimetic bronchodilators and use of corticosteroids between 2002 and 2004 meet or equal the requirements of Listing 103.3( C). If the evidence received from the treating sources is inadequate to determine whether the claimant is disabled, the Commissioner may recontact the treating source(s) for additional information or clarification, or the Commissioner may order one or more consultative examinations. 20 C.F.R. §416.912(e).

**B.** The next issue presented is whether the ALJ erred in evaluating the evidence regarding the effect of Plaintiff's impairment on the six domains of functioning which are analytical standards for measuring whether an impairment is the functional equivalent of a listed impairment. In particular, Plaintiff contends that ALJ erred by failing to fully explore the implications of an extreme limitation in the sixth domain, health and physical well-being.

Social Security regulations allow for a finding of functional equivalence to a listed impairment if the condition results in "marked" limitations of two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. §416.926a(b)(1)(i-iv)[9]  To determine whether a claimant suffers a marked or an extreme limitation in the health and physical well-being domain, the regulations examine the "cumulative effects of physical or mental impairments and their associated treatments or therapies on functioning that were not previously considered." Id. at § 416.926a(l). Examples of limitations in health and physical well-being include generalized

---

[9] A "marked" limitation is one which interferes seriously with the ability to independently initiate, sustain, or complete activities.  20 C.F.R. §416.926a(e)(2). An "extreme" limitation interferes very seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. §416.926a(e)(3)

symptoms (such as weakness, dizziness, agitation, lethargy or psychomotor retardation) somatic conditions related to the impairments, and limitations in physical functioning because of treatment. Id. at §§ 416.926a(l)(4)(i),(iii). When considering the sixth domain, the regulation provides that an extreme limitation can be demonstrated when a claimant is frequently ill because of his impairment or frequent exacerbations of the impairment that result in significant, documented symptoms or signs substantially in excess of marked limitations.[10] Id. at § 416.926a(e)(3)(iv).

In determining that Claimant has less than marked limitations in this domain, the ALJ noted that Claimant "had one admit and one emergency room treatment for asthma with no acute office attacks or steroid dependence." (T 21) However, because the ALJ failed to develop the record relating to the frequency and duration of Claimant's asthma attacks as well as the use and effects of Claimant's prescribed medications, the ALJ's finding that Claimant had less than marked limitations in the domain of general health and physical well-being should be reconsidered on remand in light of any new evidence or findings that the ALJ makes.

**C.** Plaintiff further contends the ALJ erred in failing to consider Plaintiff's testimony regarding Claimant's impairment.

In a disability case where a child is unable to adequately describe his symptoms, the ALJ may accept the testimony of a person most familiar with the child's condition. 20 C.F.R. §

---

[10] Pursuant to the regulation, for a marked limitation under the sixth domain, "frequent means that you have episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more. We may also find that you have a "marked" limitation if you have episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity." 20 C.F.R. § 416.926a(e)(2)(iv).

416.928(a). An ALJ must take into account lay testimony, unless the ALJ expressly determines to disregard the testimony and give specific reasons for doing so. See, Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1285 (11th Cir. 2004); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ's decision referenced Plaintiff's testimony that: (1) Claimant was no longer seeing Dr. Pierson, (2) Claimant had not been hospitalized since October 2002; (3) Claimant was treated in the emergency room once since October 2002; (4) Claimant sees the doctor about four times a year; (5) Claimant tires quickly, has some coughing and becomes short of breath; and, (6) Claimant becomes a little jittery when he takes his medication. (T 17, 21)

However, the ALJ failed to consider Plaintiff's testimony regarding the number of asthma attacks that did not require emergency room or doctor's visits, the medical instructions on home inhalation therapy when Claimant has consistent wheezing, the prescribed medications Claimant takes to control his asthma, and whether Claimant has coughing, consistent wheezing and breathing problems in spite of his medications and treatments. (T 236-240) As this testimony is germane to determining the nature and extent of Claimant's asthma impairment, on remand the ALJ should make express findings regarding the credibility of this testimony, in light of the case law set forth above.

## **Conclusion**

While concluding that remand for further fact-finding is necessary due to substantial evidence concerns and errors of law committed at the administrative level, this Court expresses no views as to what the outcome of the proceedings should be. At the reopened hearing, each party should have the opportunity to submit additional evidence on the issues remaining for determination.

Accordingly and upon consideration it is **RECOMMENDED** that:

(1) The decision of the Commissioner be **REVERSED** and the case be **REMANDED** for further proceedings and consideration consistent with the foregoing; and

(2) The Clerk of Court enter final judgment pursuant to 42 U.S.C. § 405(g) as this is a "sentence four remand." Shalala v.Schaefer, 509 U.S. 292, 302-03 (1993); Newsome v. Shalala, 8 F.3d 775, 779-80 (11th Cir. 1993).

Dated: July 31st , 2007

_____
ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. 636(b)(1).